IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(TOPEKA DOCKET)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   <u>00-40104-01/02-RDR</u> |
| | ) | |
| WILLIAM LEONARD PICKARD, | ) | |
| a.k.a. "John Connor," | ) | |
| "William Harlow," | ) | |
| "James Maxwell," and | ) | |
| CLYDE APPERSON, | ) | |
| a.k.a. "C," | ) | |
| Defendants. | ) | |

## <u>GOVERNMENT'S MEMORANDUM REGARDING USE OF INTRINSIC EVIDENCE IN ITS CASE-IN-CHIEF</u>

The United States of America, by and through Eric F. Melgren, United States Attorney for the District of Kansas, and Gregory G. Hough, Assistant United States Attorney for said District, respectfully supplements its arguments regarding the use of intrinsic evidence in its case-in-chief in this matter, as follows:

**1.    Introduction.**

On Jan. 28, 2003, government witness Gordon Todd Skinner testified regarding Pickard's prior conviction for LSD trafficking, which occurred in Mountainview, CA.  Pickard's attorney objected, counsel approached the bench, counsel for Apperson joined in the objection and the court ultimately held that



intrinsic evidence was admissible.  This, and other similar evidence, such as Apperson's possession of mescaline and the precursor for synthetic mescaline, et. cet., shall be offered in the government's case-in-chief of this matter.  Defendant, to date, have incorrectly classified this as evidence pursuant to F.R.E. 404(b).

Mr. Skinner has known defendants for a considerable period of time.  He has been a substantial "player" in the conspiracy alleged in this Indictment.  He has already testified that Pickard and Apperson were the primary "players" in this LSD conspiracy.  During the duration of the conspiracy, Mr. Skinner learned numerous things about these defendants, most by their own respective admissions.  These include many matters which Mr. Skinner described during testimony on Jan. 28, 2003, and more is to come during his subsequent testimony and that of fellow conspirators, all of which has been disclosed to defense counsel during discovery which commenced at least in March 2001.  All of this information describes the defendants as the men which they were during this conspiracy, by their own admissions, either direct or by adoption.

## 2.    Analysis.

The Government has introduced said evidence in its case-in-chief in this matter, independent of F.R.E. 404(b).  Thus, it is not subject to the requirements of said rule of evidence.  It is intrinsic evidence.

Acts intrinsic to the crimes charged are not excludable under 404(b).

See United States v. Pace, 981 F.2d 1123, 1135 (10th Cir. 1992), cert. denied sub nom, 113 S.Ct. 1401 (1993)(Rule 404(b) applies only to evidence of acts **extrinsic** to the charged crime);  United States v. Engstrom, 965 F.2d 836, 838 (10th Cir. 1992) (evidence that defendant who was charged with misapplication of bank funds had sent a letter to another bank falsely stating that his bank had funds in the amount of $328,500,000 available to be transferred was not 404(b) evidence, but was part of the overall scheme);  United States v. Record, 873 F.2d 1363, 1372, n. 5 (10th Cir. 1989).

> An uncharged act may not be extrinsic if:  (1) The act was part of the scheme for which a defendant is being prosecuted;  Record, 873 F.2d at 1372, n.5;  Pace, 981 F.2d at 1135 ("Conduct during the life of a conspiracy is not Rule 404(b) evidence.");  or (2) The act was "inextricably intertwined with the charged crime such that a witness' testimony 'would have been confusing and incomplete without mention of the prior act.'"  Record, 873 F.2d at 1372, n. 5 (quoting United States v. Richardson, 764 F.2d 1514, 1521-22 (11th Cir.), cert. denied sub nom, 474 U.S. 952 (1985)).

See United States v. Treff, 924 F.2d 975 (10th Cir.)(Rule 404(b) does not apply to other acts which are so "inextricably intertwined" with the crime charged that testimony concerning the charged act "would have been confusing and incomplete without mention of the prior act."), cert. denied, 111 S.Ct. 2272 (1991); United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990) ("'Other act' evidence is 'intrinsic'

3

when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged.") (Citations omitted).

The facts which have been offered and challenged at this point, and similar evidence which shall be offered through fellow-conspirators, is circumstantial evidence from which a reasonable jury could conclude that defendants were in actual or constructive possession of all the LSD, lab equipment and precursor chemical. Furthermore, the historical information, large quantity of LSD, lab equipment and precursor chemical found in their possession is sufficient to support a judgment that the defendants intended to distribute LSD.  See United States v. McIntyre, No. 91-6331 (10th Cir. June 7, 1993), citing, United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986) (citing United States v. Gonzalez, 700 F.2d 196, 204 (5th Cir. 1983)).

This evidence merely completes the full story of the charged conspiracy. It explains defendants' presence in Kansas during the relevant time frame and their possession of the evidence now-admitted in this trial, as alleged in this Indictment. This evidence is not extrinsic act evidence under Fed.R.Evid. 404(b), and thus does not require a limiting instruction as to its proper use.  See, United States v. Stouffer, 986 F.2d 916 (5th Cir. 1993).

In Stouffer, appellant argued that the district court abused its discretion

4

by refusing to submit a limiting instruction regarding testimony of financial planners and depositors who described transactions outside the Indictment.  He specifically argued that this testimony was extrinsic act evidence under Fed.R.Evid. 404(b), and thus required a limiting instruction as to its proper use.  The Court disagreed.  Citing United States v. Royal, 972 F.2d 643, 647 (5th Cir.1992), the Court held that this evidence was relevant to establish the existence of a criminal enterprise, and was thus not extrinsic to the crime charged.  The Court stated:

> We disagree because evidence relevant to establish the existence of a criminal enterprise is not extrinsic to the crime charged.  See United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992) (holding that background information is not extrinsic evidence where "inextricably intertwined" with the crime charged), cert. denied, --- U. S. ----, 113 S.Ct. 1258, --- L.Ed.2d ----, (1993);  Lokey, 945 F.2d at 834 ("Such evidence (i.e., beyond scope of indictment) was not extrinsic to the conspiracy charged, because it was relevant to establish how the conspiracy came about, how it was structured, and how each appellant became a member.").  Because the testimony of financial planners and depositors was not extrinsic act evidence, Stouffer's proposed limiting instruction was an incorrect statement of the law.

"Evidence of criminal activity other than offense charged is not extrinsic evidence if it is inextricably intertwined with evidence of charged offense or is necessary to complete story of charged offense."  United States v. Leavitt, 878 F.2d 1329 (11th Cir. 1989).

The fundamental error of defendants' argument is that the evidence relating the prior events is not "other crimes" evidence, but is simply evidentiary details of the crime with which they are charged;  conspiracy to possess with the intent to manufacture and distribute LSD, a controlled substance.

Evidence of criminal acts is not objectionable when it involves the actual charges in a case. See, e.g., Sanabria v. United States, 437 U.S. 54 (1978). Sanabria was acquitted by the trial judge of conducting an "illegal gambling business." The indictment charged that the business was illegal because it violated state law governing horse race betting.  Although the Supreme Court held that the acquittal was not reviewable by appellate courts because of double jeopardy constraints, it suggested that the trial judge erroneously excluded evidence that the defendants, including Sanabria, used the gambling business to take numbers bets as well as horse race bets.  (Sanabria, supra, text accompanying footnote 22 and note itself).  The Government only had to show a violation of some state law as a jurisdictional prerequisite, and once this prerequisite was satisfied the government should have been permitted to show the scope of the gambling business and its members.  The evidence was not "other crime" evidence.  It was proof of the actual crime charged - i.e., an illegal gambling business.

In United States v. Martin, 794 F.2d 1531 (11th Cir. 1986) two rifles, a

pistol and ammunition from a vessel which had been carrying marijuana were properly admitted at trial on marijuana related offenses by defendants who were intercepted by the coast guard after the vessel fled.  The defendants argued on appeal that the weapons and ammunition constituted extrinsic evidence of other crimes or wrongs and that they were inadmissible or alternatively that a limiting instruction should have been given.  The Eleventh Circuit, however, ruled that the guns and ammunition were "direct evidence" of the crimes charged.  Id. at 1533.  See also United States v. Anzalone, 783 F.2d 10 (1st Cir. 1986) (The Court affirmed a defendant's mail fraud convictions, finding that evidence of his prior dealings with insurance companies was admissible to prove the deception of the insurance companies that gave rise to the Indictment);  United States v. Heinemann, 801 F.2d 86, 95 (2nd Cir. 1986) (Affirming defendants' conviction for conspiracy to defraud the United States in connection with the sale of "ministries" in purported tax-exempt churches, the Court found that evidence that a defendant had lied to a grand jury was proof of the crime charged rather than an unrelated other act);  United States v. Giraldo, 822 F.2d 205 (2nd Cir.), cert. denied, 108 S.Ct. 466 (1987) (defendant's answering machine tapes which contained orders for cocaine were admissible to prove the defendant's intent to distribute);  United States v. Soliman, 813 F.2d 277 (9th Cir. 1987) (The Court upheld a defendant's conviction arising out of a scheme to

forge death certificates and collect insurance proceeds, finding that a summary chart of 102 fraudulent insurance claims was direct evidence of the scheme alleged and not "other crimes" evidence);  United States v. Vaccaro, 816 F.2d 443 (9th Cir.), cert. denied, 108 S.Ct. 295 (1987) (evidence of specific uncharged jackpot cheating incidents were properly admitted to prove the conspiracy charge, i.e., to rig jackpots in hotels and casinos);  United States v. Finestone, 816 F.2d 583 (11th Cir.), cert. denied, 108 S.Ct. 338 (1987) (evidence of execution-style murder properly admitted to prove pattern of racketeering activity).

Further, admission of this evidence will not constitute a variance.  The defendants have all received full discovery of the Government's evidence in this matter.  The defendants have both been placed on ample notice of the nature of the evidence and charges against them.  See United States v. Cardall, 885 F.2d 656, 670 (10th Cir. 1989).  Thus, this evidence is fully admissible as intrinsic evidence, independent of F.R.E. 404(b).

## 3.  Conclusion.

For these reasons, the United States respectfully requests that this Court enter an order sustaining its prior rulings regarding the government's use of intrinsic evidence in its case-in-chief.

Respectfully submitted,

ERIC F. MELGREN
United States Attorney

GREGORY G. HOUGH
Assistant U.S. Attorney
444 S.E. Quincy, Rm. 385
Topeka, KS.  66683
(785) 295-2850
Ks. S.Ct. No. 12860

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing was hand delivered on the 29th day of January, 2003, addressed to the following:

William K. Rork
1321 S.W. Topeka Blvd.
Topeka, KS.  66612-1816

Mark L. Bennett, Jr.
5605 SW Barrington Court South, Suite 201
Topeka KS  66614

GREGORY G. HOUGH, #12860
Assistant United States Attorney

10