IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA
            Plaintiff,

Vs.                                          No.  00-CR-40104-01/02-JTM

WILLIAM LEONARD PICKARD,
CLYDE APPERSON,
            Defendants.

## GOVERNMENT'S MEMORANDUM REGARDING SEALED DOCUMENTS

COMES NOW the plaintiff, the United States of America, by and through Barry R. Grissom, United States Attorney for the District of Kansas, and Gregory G. Hough, Assistant United States Attorney for said District, and responds to this Court's order directing the government to show good cause for keeping the below-described records under seal.  (Doc. 748, Dist. Ct.'s 1/9/14 Minute Order.)    This Court has asked the government to (1) articulate the governmental interest in keeping the records sealed, and (2) demonstrate whether such interest may or not be achieved through selective redaction of the records.  (*Id.*)

1

A.      Statement of Facts and Procedural History

On March 28, 2006, the United States Court of Appeals for the Tenth Circuit affirmed the defendants' convictions for possession with intent to distribute ten grams or more of lysergic acid diethylamide (LSD); and conspiring to manufacture, distribute, and dispense ten grams or more of lysergic acid diethylamide (LSD), both in violation of 21 U.S.C. § 841(a)(1).  *United States v. Apperson*, 441 F.3d 1162, 1214 (10th Cir. 2006).  In affirming the convictions, the Tenth Circuit rejected the defendants' claim that the government withheld *Brady* and *Gigilo* information from the defendants.[1]  *Id.* at 1209.  The Tenth Circuit also found that the district court did not err in denying the defendants' motions for judgment of acquittal because the evidence against them was overwhelming.  *Id.* at 1209-10.  *See also id.* at 1175-77 (summarizing evidence).

On January 7, 2008, the defendants filed nearly identical § 2255 motions in the district court, advancing various grounds in support of their request for a new trial.  (*See* Doc. 554, Def. Pickard's 1/7/08 § 2255 Mot.; Doc. 555, Def. Apperson's 1/7/08 § 2255 Mot.)  Under Ground Two, both defendants alleged that

---

[1]      *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); *Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within th[e] general [*Brady*] rule.") (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959))).

the government had violated its *Brady*/*Giglio* obligations by "suppressing witnesses['] criminal and informant backgrounds specifically required by defendant." (Def. Pickard's § 2255 1/7/08 Mot. at 16 of 48; Def. Apperson's § 2255 1/7/08 Mot. at 16 of 36.)  In support of this claim, both defendants attached an 11-page legal and factual memorandum detailing the alleged suppression of information, the vast majority of which allegedly related to background information regarding Gordon Todd Skinner, who testified as a witness for the government, but later assisted the defense during the trial.[2]  (*See* Def. Pickard's 1/7/08 § 2255 Mot. at 16-26 of 48; Def. Apperson's 1/7/08 § 2255 Mot. at 16-26 of 36.)  Therein, the defendants set forth a long, detailed, and expansive list of information that the government allegedly suppressed regarding Skinner's prior history as an informant, his cooperation in other cases, prior investigations involving him, benefits he received from the government, and reports of his own drug manufacturing activities. (*Id.*)  The defendants asserted that this allegedly withheld information constituted both impeachment and exculpatory evidence under *Brady* and *Giglio*. (*See* Def. Pickard's 1/7/08 § 2255 Mot. at 22-26 of 48; Def. Apperson's 1/7/08 § 2255 Mot. at 22-26 of 36.)

---

[2]      (*See* Doc. 609, Dist. Ct.'s 4/6/09 Mem. & Order at 20 ("During trial, after Skinner's testimony in the government's case, he began assisting defendants. . . . Skinner was available to the defendants during the trial and provided assistance to them.  Skinner continued to assist the defendants following completion of the trial. He has written letters to counsel for the defendants and provided additional information.").)

The district court rejected the defendants' claim.  (*See* Doc. 609, Dist. Ct.'s 4/6/09 Mem. & Order at 20-26.)  The district court found that the totality of this information was not material under *Brady*, that it would not have changed the result of the trial, and that the defendants had received a fair trial.  (*Id.* at 20-21.) Based on these and other findings, the district court denied the defendants' § 2255 motions.  (*Id.* at 45.)

The defendants subsequently appealed the district court's denial of their § 2255 motions to the Tenth Circuit, which denied them a certificate of appealability.  *See United States v. Pickard*, 396 Fed. Appx. 568, 571-72 (10th Cir. 2010).  While their § 2255 appeals were pending, the defendants filed claims under Federal Rules of Civil Procedure 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(6), 60(d), and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), *overruled on other grounds by Standard Oil of Cal. v. United States*, 429 U.S. 17 (1976)), alleging that they had recently discovered, through a request filed under the Freedom of Information Act, that law enforcement agencies other than the DEA had participated in the investigation of their crimes.  (*See* Doc. 637, Defs.' 4/5/10 Rule 60(b) Mot. to Correct Defects in Dist. Ct. Proceedings at 3, 19-22 (Ground Six); Doc. 639, Defs.' 4/5/10 Mot. Based on Newly Discovered Evid. at 1-4, 26).)

They attached great significance to this discovery because, they alleged, the government had falsely denied that other agencies had participated in the

investigation and suppressed records generated by these other agencies. (Doc. 639, Defs.' 4/5/10 Mot. Based on Newly Discovered Evid. at 2-3.) The defendants tethered this claim to their previously raised *Brady* claims, arguing that "[b]y affirmatively disavowing any substantive participation by agencies other than the DEA in the investigation, the government thereby purposely eluded its responsibility to access and provide records on the government witnesses' investigative histories, and knowingly avoided its *Brady* obligations . . . ." (*Id.* at 26.) By way of relief, they requested that the district court "[c]onduct an evidentiary hearing, ordering production of documents, and engaging in other investigative measures as necessary to reveal the extent of any fraud[.]" (*Id.* at 34.)

The district court denied this claim, ruling that it constituted a substantive habeas claim that had already been decided on the merits, and was thus a second or successive habeas claim, which it did not have jurisdiction to adjudicate. (Doc. 654, Dist. Ct.'s 1/24/11 Mem. & Order at 9-10.) The district court then transferred these claims to the Tenth Circuit pursuant to 28 U.S.C. § 2244(b)(3). (*Id.* at 10-11.)

On March 21, 2011, the defendants filed a Motion for Remand in the Tenth Circuit, urging the Tenth Circuit to remand their claim back to the district court for further proceedings. (*See* Tenth Cir. Doc. 01018607014, Defs.' 3/21/11 Mot. for Remand, case no. 11-3030.) Citing Rule 60(b), Rule 60(d) and *Hazel-Atlas Glass*

*Co*., they argued that the district court erred in denying their motions as successive habeas petitions because their claims constituted "an independent action in equity and not second or successive and must be remanded to the district court for further proceedings." (*Id.* at 5.) They maintained that the government deceived the district court about the participation of other agencies in the investigation of this case, and that this alleged deception affected the integrity of the district court's resolution of their habeas *Brady* claims. (*See id.* at 4 ¶ 8, 11 ¶ 9.)

Three days later, on March 24, 2011, the defendants filed the document that is the subject of the instant issue before this Court, namely, Document 657, Motion to Unseal Documents. (*See* Doc. 657, Def.'s 3/24/11 Mot. to Unseal Docs.) There, they requested that the district court unseal several documents relating to Skinner, which the district court had sealed during the proceedings. (*Id.* at 1.) Specifically, they requested that the district court unseal his (1) "risk assessment file," (2) his "confidential informant file," and (3) various other specified documents. (*Id.* at 1-2.) They claimed entitlement to the relief sought under the First Amendment, the Sixth Amendment, and the common law. (*Id.* at 2.) The government opposed the motion, arguing that the defendants had cited "no legitimate need" for the documents, and that the defendants had not identified any interest that outweighed the interests of the Drug Enforcement Administration in

keeping the documents confidential.  (Doc. 666, Govt.'s 3/29/11 Resp. to Def.'s Mot. to Unseal at 3.)

On May 9, 2012, the district court denied the defendants' Motion to Unseal Documents.  (*See* Doc. 705, Dist. Ct.'s 5/9/12 Order.)  First, it noted that it was unaware of any authority giving a right of public access to confidential informant information, and even if such a right existed, "the interests of maintaining confidentiality of information concerning confidential informants outweigh any right of access by the defendants or the public." (*Id.* at 4-5.)  Second, the district court observed that the defendants had not "sufficiently demonstrated the need for unsealing these documents," and had "failed to adequately show why the public has any interest in these documents." (*Id.* at 6.)  Finally, the district court concluded that any First Amendment right the defendants had in unsealing the documents was "outweighed by the needs of the confidential informant." (*Id.* at 6-7.)  Accordingly, the district court found that the documents should remain sealed, explaining that some of the information "should not be revealed":

> The court continues to believe that the DEA documents related to Skinner should remain under seal.  The court acknowledges that some aspects of these matters have been referred to by this Court and mentioned by the government at various times during these proceedings.  Nevertheless, the court fails to find that all of the information contained in the documents has been revealed. **The court is further persuaded that some of it should not be revealed.**  The defendants have failed to indicate exactly why these documents now need to be unsealed.  They have not specifically explained what information in any of the documents is necessary for them to use in

any appropriate legal proceedings.  The court remains convinced that information concerning confidential informants should remain private absent a compelling reason.  The court recognizes that much of Skinner's life has been placed under the microscope in this case, but we see no need for any further examination of his past.  The court finds that defendants have not sufficiently demonstrated the need for unsealing these documents.  The defendants have also failed to adequately show why the public has any interest in these documents.

(Doc. 705, Dist. Ct.'s 5/9/12 Order at 5-6 (emphasis added).)

The defendants appealed this denial to the Tenth Circuit.  *See United States v. Pickard/Apperson*, 733 F.3d 1297 (10th Cir. 2013.)  Notwithstanding the district court's clearly articulated concern that some of the information in the documents "should not be revealed," the Tenth Circuit found the district court "erred in the manner in which it considered Defendants' motion to unseal the DEA file, in three ways[.]."  *Id.* at 1303.  First, it noted the government had the burden to "articulate a significant interest that outweighs the presumption of public access to the DEA records," but the government "did not articulate any such interest."  *Id.*  Second, it found the district court "incorrectly placed the burden on Defendants to proffer a compelling reason why they needed to have the documents unsealed" instead of applying the presumption that judicial records should be open to the public.  *Id.* Third, it found "the district court did not consider whether selectively redacting just the still sensitive, and previously undisclosed, information from the sealed DEA documents and then unsealing the rest of the DEA file would adequately serve the government's interest."  *Id.* at 1304.   Accordingly, the Tenth Circuit

8

reversed the district court's denial of the defendants' motion and remanded this case back to this Court "to reconsider that motion in light of our decision." *Id.* at 1305.

## B.   Discussion

As ordered by this Court, the government now proceeds to (1) articulate the governmental interest in keeping the records sealed, and (2) demonstrate whether such interest may or not be achieved through selective redaction of the records.

### 1.   Governmental Interest in Keeping Records Sealed

The government asserts that the records should remain sealed on the basis of three main governmental interests.  First, unsealing the records would thwart the government's interest in providing the public with effective law enforcement. Incident to its duties and responsibilities to protect the citizenry, the government must conduct criminal investigations.  Sometimes those investigations involve and resort to the use of confidential informants and sources of information, who may assist the government by providing information or working in an undercover capacity.  Naturally, agents conducting investigations will collect information about these informants and maintain this information in their case files. Oftentimes that information may relate to an informant's personal information, personal information of investigative subjects or uninvolved third parties, law enforcement methods and techniques, or other sensitive information that if it were

to be released would compromise personally identifiable information or jeopardize ongoing or future investigations.  It is noted that Pickard has one closed FOIA suit in the District of Arizona (D.Az. No. 4:11-CV-00443-DCB, Doc. 133), and one pending in the Northern District of California (N.D.Ca. No. 3:06-cv-00185-CRB). In each, Pickard seeks several documents relating to Skinner.  In each, several FOIA exemptions apply to keep the information from release because it concerns releasing personal information or law enforcement methods or techniques.

Were courts to routinely require that the government disclose those files containing that information, persons who might be inclined to assist the government by becoming informants would certainly hesitate to do so, especially if they knew that assisting the government would result in the government disclosing such information.  Therefore, disclosure of the records at issue, insofar as it would deter other persons from cooperating with the government in future cases, would thwart the government's interest in providing the public with effective law enforcement.  With respect to informants in particular, it is necessary to protect their privacy interests, even if they were testifying witnesses, in order to avoid a chilling effect on the subject informant or on other informants.  *See Kiraly v. FBI*, 728 F.2d 273, 278-80 (6th Cir. 1984); *cf. Roviaro v. United States*, 353 U.S. 53, 59-62 (1957) (discussing "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged

with enforcement of that law" in order to further "the public interest in effective law enforcement").

Second, unsealing the records would open witnesses and law enforcement personnel named in those records to physical attacks, threats, harassment, or retaliation, and the government has a weighty interest in protecting their safety. *See United States v. Bus. of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1195 n. 5 (9th Cir. 2011) (recognizing that "the need to protect the identities and safety of confidential informants" and "the need to protect an ongoing investigation" may require redaction of warrant materials, post-indictment, or sealing them entirely); *Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) (sealing documents in inmate civil litigation in order to protect confidential informants from retaliation).

Third, the government asserts an interest in protecting from disclosure matters that this Court has already deemed worthy of protection.

> The court continues to believe that the DEA documents related to Skinner should remain under seal.  The court acknowledges that some aspects of these matters have been referred to by this Court and mentioned by the government at various times during these proceedings.  Nevertheless, the court fails to find that all of the information contained in the documents has been revealed.  **The court is further persuaded that some of it should not be revealed**.

(Doc. 705, Dist. Ct.'s 5/9/12 Order at 5-6 (emphasis added).)  For obvious reasons, the district court did not specify what information "should not be revealed," but the

district court must have had good reason to deem some matters within the file to be worthy of protection.  It is reasonable to infer that the district court was referring to a privacy interest that Skinner may have in the information that should not be revealed.  *See generally Kiraly*, 728 F.2d at 280 (stating that "[w]hile it is true that [the testifying witness] cannot suppress those facts which have become a matter of public record, she retains her right to privacy as to other personal matters").  In any event, the fact remains that the district court, after reviewing the file, determined that some of the information should not be revealed, and no basis exists to question this assessment.

These governmental interests are not outweighed by either the public's or the defendants' interests in disclosure.  In fact, the public's interest in disclosure is negligible.  The records defendants seek are of no interest to anyone but defendants, who want them to use to challenge their convictions.  *See Pickard*, 733 F.3d at 1301 n.3 ("Pickard and Apperson allege a variety of ways in which they desire to use these records, including a further attack on their convictions and future FOIA litigation.").  But a defendant's "personal stake in using the requested records to attack his conviction[] does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d

1115 (D.C. Cir. 2004); *accord Thomas v. U.S. Dep't of Justice*, 531 F. Supp. 2d 102, 108-09 (D.D.C. 2008) ("'The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction.'") (citing cases).

The public's interest in disclosure is negligble. The defendants' interests in unsealing is *de minimus*. This is so because the district court has already stated that the requested documents contain no *material* information that could provide a basis for reversing their convictions. In resolving the the defendants' § 2255 *Brady* claims, the district court found that the government had presented overwhelming evidence of the defendants' guilt at their trial, even in light of Skinner's credibility issues, and additional evidence regarding Skinner would be immaterial:

> The aforementioned discussion reveals the following concerning the defendants' contention that the government suppressed evidence of Skinner's criminal and informant activities: (1) Skinner was exhaustively cross-examined about a variety of matters that questioned his credibility; (2) the jury fully understood the issues concerning Skinner's credibility; (3) the government presented substantial evidence corroborating the testimony provided by Skinner; (4) the government produced overwhelming evidence of the defendants' guilt; (5) the defendants had access to Skinner during the trial which allowed them to obtain much of the information that they now contend was suppressed; and (6) the government provided the defendants with all relevant Brady/Giglio material in the possession of the DEA prior to trial.
>
> [¶] These conclusions support a finding that the suppressed matters concerning Skinner's criminal and informant activities are not material. There is no reasonable probability that the disclosure of this

material would have produced a different outcome. Most of the evidence noted by the defendants would simply have been cumulative to the other evidence that was offered to impeach Skinner's testimony. The overwhelming evidence that was presented also demonstrated that this evidence would not have produced another result. In sum, the court finds that the defendants received a fair trial.

(Doc. 609, Dist. Ct.'s 4/6/09 Mem & Order at 20-21.) *See also Apperson*, 441 F.3d at 1209-10 ("we note that the testimony of Skinner, combined with the substantial physical evidence, was more than ample to support the convictions"); *id.* at 1175-77 (summarizing evidence against defendants).

Moreover, the frivolity of Pickard's defense–that he was acting as a secret agent for the government–undercuts any inference that any allegedly withheld information could have been material under *Brady*. *See id.* at 1205-06 (discussing Pickard's defense that he was acting as a secret agent for the government); *id.* at 1206 ("[N]one of testimony cited by Pickard establishes that Pickard was engaged by a government official to participate in covert activity[.]"); *id.* at 1210 (noting "there was little, if any, evidence to support Pickard's own testimony, and the verdicts indicate that the jury reasonably rejected that testimony as incredible"); *id.* at 1205 (noting district court denied defendant Pickard's instruction for the public authority defense because district court found "'absolutely no evidence whatsoever of any tie-in with public authority'") (quoting district court). In effect, defendant Pickard presented a patently frivolous defense without any evidentiary

support, and no rational jury would have accepted this defense even assuming the defendants could have presented additional information about Skinner. Accordingly, the defendants' interests in disclosure is *de minimus* because disclosure would have no impact on their convictions.

### 2.    Selective Redaction of the Records

The government doubts that its weighty and substantial interests in non-disclosure can be vindicated through selective redaction of the records.   As noted, such disclosure would have a chilling effect on other would-be informers in other cases, thereby thwarting the government's and the public's interest in effective law enforcement; it would unnecessarily subject the persons mentioned in the documents to possible threats, harassment, or retaliation; and it would needlessly invade the legitimate privacy interests of persons mentioned in the records, as already recognized by the district court.    However, should this Court deem selective redaction appropriate, the government believes that redacting information in the documents that are not already in the public domain might serve to protect the government's interests.   This has already been done with the filing of the *Vaughn* index in Pickard's FOIA litigation in the Northern District of California. *See* N.D.Ca. No. 3:06-cv-00185-CRB, Doc. 166.  (Exhibit 1).

Respectfully submitted:
BARRY R. GRISSOM
UNITED STATES ATTORNEY

s/ *Gregory G. Hough*
GREGORY G. HOUGH
Kan. S. Ct. No. 12860
Assistant United States Attorney
444 S.E. Quincy Ave., Ste. 290
Topeka, KS  66683
(785) 295-2850
Greg.Hough@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of January, 2014, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system, which will send a copy of this pleading to the defendants' attorney of record, William K. Rork.


s*/ Gregory G. Hough*
Gregory G. Hough
Assistant United States Attorney